IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN ROBERT BOHR, | : | Civil No.  1:24-CV-00290 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of Social Security | : | |
| | : | |
| Defendant. | : | |

MEMORANDUM OPINION

## I.   Introduction

The plaintiff in this case, Brian Bohr, challenges the decision of a Social Security Administrative Law Judge (ALJ) which found that he had not met the exacting standards for disability under the Social Security Act. In particular, on appeal Bohr insists that the ALJ failed to include limitations in the residual functional capacity (RFC) to account for each of his severe and nonsevere impairments. He also challenges the ALJ's treatment of the medical opinion evidence, arguing the RFC was unsupported since the ALJ only partially credited the non-examining source opinions and no treating source opined on his limitations.

In considering these arguments, we are enjoined to apply a deferential standard of review, a standard of review which simply asks whether there is

1

"substantial evidence" supporting the ALJ's determination. With respect to this legal

guidepost, as the Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, after an independent review of the record, and mindful of

the fact that substantial evidence "means only—'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion,'" id., we find that

substantial evidence supported the ALJ's findings. Therefore, for the reasons set

forth below, we will affirm the decision of the Commissioner.

II.    **Statement of Facts and of the Case**

A. **Bohr's Medical History**

On November 30, 2021, Brian Bohr applied for a period of disability and disability insurance benefits under the Social Security Act, alleging disability beginning June 13, 2019.[1] (Tr. 14).  According to Bohr, he was totally disabled due to a series of medical conditions, including PTSD, anxiety, ADD, chronic back pain, spinal stenosis, COPD, high blood pressure, irregular heartbeat, depression, and neuropathy. (Tr. 108). Bohr was born was born on August 10, 1977, and was 41 years old, which is defined as a younger individual by the Commissioner's regulations, at the time of this alleged onset of his disability. (Id.) He had a high school education and had previously worked as an EMT and paramedic. (Tr. 44-45).

Bohr's mental and physical health problems are interrelated and, in many ways, also stem from his previous work as an EMT and paramedic. He testified that he was laid off from his previous work due to his health issues, stating he "kept getting sick," later clarifying that he was missing work due to chronic pain from issues with his cervical, thoracic, and lumbar spine. (Tr. 40, 62-63). At the hearing,

---

[1] Bohr previously filed an application for a period of disability and disability insurance benefits that was denied when an ALJ issued an unfavorable decision on August 4, 2020. (Tr. 79-99). Nonetheless, the ALJ considered his application to be reopened, and the alleged onset date remained the date in his original application, June 13, 2019. (Tr. 14).

he testified that he is unable to be on his feet and that lifting of any kind aggravates his back and causes excruciating pain. (Tr. 49). He also testified that he can only walk for five minutes and sit for a half hour and that he can only lift ten pounds. (Tr. 49, 51). As to Bohr's mental impairments, he testified that he experiences nightmares and flashbacks of very horrific calls he responded to in his past work and also that his chronic pain has led to an exacerbation of his mental health, culminating in a two-week psychiatric inpatient admission in Fall 2022. (Tr. 40).

The medical record reflects that the plaintiff's impairments caused limitations in his ability to function physically and mentally. Nonetheless, the clinical evidence is relatively meager and shows periods of exacerbation of the plaintiff's symptoms, but also physical examination findings of normal strength, reflexes, sensation, and gait. As to the plaintiff's physical impairments including back pain, spinal stenosis, neuropathy, and COPD, the ALJ aptly summarized the clinical record:[2]

> The claimant's treatment records document a diagnosis of neuropathy in March of 2019, based upon an EMG testing, with reported initial good control with use of Gabapentin that became less beneficial and the

---

[2] It appears the plaintiff does not challenge the ALJ's summary and consideration of the longitudinal medical evidence, in fact, seemingly arguing that the ALJ adequately touched on the symptomology of each of the plaintiff's impairments but did not incorporate all of these symptoms into the RFC. Moreover, the plaintiff has not provided his own summary of the medical evidence. Thus, while we have conducted our own independent review of the clinical record, our summary cites heavily to the ALJ's decision to the extent that these ALJ findings were supported by substantial evidence..

claimant has indicated a burning sensation of his feet (Exhibits B5F/69, 143; B8F/16). However, examinations show normal sensation (Exhibits B2F/1, 14; B4F/3; B5F/34, 70; B10F/8, 18).

A March 13, 2021 MRI of the claimant's lumbar spine showed multilevel degenerative disc disease with stable, small left subarticular recess and left neural foramen disc protrusions at L4-5 and L5-S1 (Exhibit B5F/339). The claimant engaged in treatment, including injection therapy but received little relief and on May 26, 2021, underwent a consultation with an orthopedic surgeon who recommended a lumbar laminectomy (Exhibits B3F/7-12; B5F). On August 19, 2021, the claimant underwent lumbar surgery (Exhibit B3F/6). During the two (2) week follow up appointment, the claimant was documented as doing well and reported improvement of the lower extremity symptomology and lower back pain (B3/14). Upon examination, there were no motor or sensory deficits, strength and reflexes were normal, straight leg raise testing was negative, and a normal, non-antalgic gait (Exhibit B3F/14). The claimant reported improvement during a subsequent appointment (Exhibit B3F/17). On October 22, 2021, the claimant's physical examination results demonstrated full extremity strength, normal reflexes and sensation, and an intact gait (Exhibit B4F/3). However, on November 30, 2021, the claimant was treated at the ER for significant lumbar spine pain for three (3) days (Exhibit B5F/27, 31). He continues to utilize medical marijuana for pain (Exhibit B8F/15). The claimant's most recent examination in September of 2022 showed positive tenderness to palpation of the spine and positive facet loading maneuvers, but full strength bilaterally, negative straight leg raise testing, and a stable gait (Exhibit B10F/4, 8). Further, there is no prescription for an assistive device or opinion of record that the same is medically necessary; the only indication of use of a cane was following the claimant's surgery for a brief period during healing (Exhibit B5F/36).

The claimant also carries a diagnosis of COPD and is prescribed inhalant medication; however, his respiratory examinations are generally unremarkable (Exhibits B3F/3, 4; B5F/13, 14).

(Tr. 22-23). Thus, with regard to the plaintiff's back impairments, the clinical record indicates that the plaintiff experienced some relief following his 2021 lumbar laminectomy. In fact, at the ER visit noted by the ALJ, the plaintiff stated that he experienced relief from his lumbar pain from the laminectomy but that he continued to experience pain in the thoracic area. (Tr. 498). Further clinical notes also indicate that he experienced intermittent episodes of neck pain radiating down his arms as far back as 2019. (Tr. 539, 582, 613, 636, 657). Nonetheless, as noted at the hearing, these episodes were often associated with increased physical activity on the part of the plaintiff. For example, in April 2021 he reported to the emergency department after his back pain was exacerbated "when he was hanging off of his main roof trying to fix a shingle." (Tr. 1019). Also, in December 2022, he reported he had hurt his left shoulder placing drywall while remodeling his bathroom. (Tr. 1049, 1232).

The plaintiff also highlights his chronic fatigue, which is supported by notes showing diagnoses of chronic fatigue and that he stated he always felt tired and was falling asleep at inappropriate times. (Tr. 511, 514, 519, 520, 524, 536, 564). But the etiology of the fatigue is not borne out in the record nor are the limiting effects of this symptom clear. For example, in October 2021, he had a neurological consultation for excessive sleepiness and significant daytime hypersomnolence where it was noted Bohr had a need for excessive naps and sleep attacks and

symptoms consistent with cataplexy. (Tr. 467). It was noted that his CPAP machine had been recalled and that tests were needed to ensure appropriate pressure on the CPAP machine, but testing was also recommended to rule out narcolepsy. (Tr. 469). Nonetheless, it does not appear that any additional testing was performed, our independent review of the record revealed no additional clinical indication of narcolepsy, cataplexy, or excessive sleepiness later in the record, and examination notes frequently stated he was negative for fatigue. (Tr. 403, 420, 499, 522, 526, 533, 540, 547, 555, 568, 574, 577, 583, 590, 597, 601, 608, 614, 620, 625, 628, 637, 640, 651, 658, 668, 676, 689, 695, 709, 950, 1020, 1051, 1060, 1079, 1101).

As to the Bohr's mental impairments of PTSD, depression, and anxiety, the ALJ explained:

> With regard to the claimant's mental health conditions, he has been treated on an outpatient basis for major depressive disorder, a generalized anxiety disorder, ADHD, and PTSD with medication management through his primary care physician and some outpatient counseling (Exhibits B5F/62; B6F; B7F; B14F). During his treatment, the claimant reported difficulty managing stress, nightmares and flashbacks, anxiousness, and depression; with the exception of mood instability and only fair insight and judgment, mental status examinations are generally unremarkable, showing the claimant is alert and oriented, thoughts are organized, and memory and cognition are intact (Exhibits B6F; B7F). Additionally, at times, the claimant has reported that the prescribed medication is beneficial, including ceasing of the claimant's nightmares (Exhibits B6F/6; B7F/4, 10).
>
> On October 26, 2022, the claimant was voluntarily hospitalized for suicidal ideation without a plan, reporting ongoing pain and depression

7

relating to his physical conditions and inability to work, losing his pet of fourteen (14) years, and feeling like a burden to his family (Exhibit B13F/6, 17). The claimant was noted to have ceased prescribed medication(s) and was discharged on November 9, 2022 with a new medication regimen (Exhibit B12F/1-2).

The claimant's most recent outpatient counseling records show he is engaging in treatment to learn effective ways to cope with situational stressors and the guilt associated with not being a financial provider for his family (Exhibit B14F).

(Tr. 23).

Thus, the clinical record does support some degree of limitation to account for the plaintiff's mental impairments but also notes relatively stable mental status examination findings and improvement with therapy and treatment.

## B. <u>The Medical Opinion Evidence</u>

Given this equivocal clinical history, the plaintiff's records were assessed by two State agency medical consultants and two psychological consultants. No treating or examining source opined on the plaintiff's ability to perform work-related activity. As to the plaintiff's physical abilities, on July 13, 2022, State agency medical consultant Dr. John Gerome Bertolino opined that the plaintiff was capable of performing light work. (Tr. 116). Specifically, Dr. Bertolino concluded Bohr could sit, stand, and walk for six hours total in an eight-hour workday, could occasionally lift and/or carry twenty pounds and could frequently lift and/or carry ten pounds, but could only frequently climb ramps/stairs, ladders/ropes/scaffolds,

stoop, kneel, crouch, or crawl. (Tr. 112-13). According to Dr. Bertolino, Bohr would also have certain environmental limitations, including avoiding concentrated exposure to extreme cold, extreme heat, humidity, noise, vibration, and hazards due to his lower respiratory disease. (Id.)

On reconsideration, on November 2, 2022, Dr. Ruth Myers Arnold also concluded the plaintiff could perform a reduced range of light work, finding that he could only stand/walk for a total of four hours but could sit for a total of six hours in an eight-hour workday, could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds, and could only occasionally climb ramps/stairs, never climb ladders/ropes/scaffolds but could frequently perform other postural activities such as balance, stoop, kneel, crouch, and crawl. (Tr. 122-23). Dr. Arnold referenced the plaintiff's chronic pain, laminectomy, cervical neck pain, neuropathic pain in the setting of class I obesity, and history of vertigo but noted he required no ambulatory assistive device, demonstrated normal gait, drove a motor vehicle, and that his sensation was intact. (Tr. 123). She further opined that the plaintiff should avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, and fumes, odors, dusts, gasses, and poor ventilation and should avoid all exposure to hazards, noting his COPD and asthma as well as his orthopedic and neuropathic conditions. (Tr. 123-24)

With regard to the plaintiff's ability to mentally function in the workplace, on June 16, 2022, State agency psychological consultant Dr. Edward Jonas opined on the plaintiff's mental RFC, concluding that Bohr had no limitations in his ability to understand, remember, or apply information, mild limitations in his ability to interact with others, concentrate, persist, or maintain pace, and moderate limitations in his ability to adapt or manage oneself. (Tr. 111). Specifically, Dr. Jonas opined that Bohr would be moderately limited in his ability to respond appropriately to changes in the work setting, and had somewhat limited stress tolerance, but stated that he could make simple decisions, appeared able to accept instruction and carry out directives, and that the functional limitations resulting from his mental health impairments did not preclude him from meeting the basic mental demands of simple routine tasks on a sustained basis. (Tr. 115). The opinion of Dr. Roger Fretz on reconsideration reflected the same limitations as those opined by Dr. Jonas. (Tr. 121, 125). Dr. Fretz further explained that the updated treatment records showed Bohr continued to be cooperative and responsive to ongoing mental health treatment with no evidence of a thought disorder or severe dysfunction in any domain. (Tr. 126).

It was against this medical background that Bohr's case came to be considered by the ALJ.

C. **The ALJ Hearing and Decision.**

A hearing was conducted in this case on March 7, 2023, at which Bohr and a vocational expert testified. (Tr. 34-78). In his testimony, Bohr highlighted ongoing issues with his cervical, thoracic, and lumbar spine with the pain exacerbating his mental health symptoms. (Tr. 40). And, while plaintiff's counsel noted that his overexertion can lead to pain, he also indicated that Bohr retained an ability to at least perform some physical activity and activities of daily living. For example, he noted instances where the plaintiff shoveled snow, fixed flashing, and helped his father repair drywall, although he stated he ended up hospitalized after each instance. (Tr. 41). Nonetheless, the plaintiff also testified he can do laundry, drive, do minimal cooking, and occasionally grocery shop. (Tr. 52).

The ALJ also examined a vocational expert at the hearing who testified that jobs existed in the national economy that the plaintiff could perform at both the light and sedentary exertional levels with the same postural, environmental, and psychological limitations crafted by the ALJ to account for the plaintiff's impairments. (Tr. 69-71). Moreover, the vocational expert (VE) testified that, if the plaintiff needed to alternate between sitting and standing every thirty minutes due to low back pain and both lower extremity numbness, the jobs would remain but be reduced by fifty percent. (Tr. 72). As for off-task and absenteeism, the VE testified

11

to a ten percent off-task tolerance in unskilled work, and a tolerance of a person being absent no more than two days per month. (Tr. 73-74). Further, needing an additional unscheduled 30-minute break every day and having to elevate legs while sitting would be work preclusive. (Tr. 75).

Following this hearing, on April 3, 2023, the ALJ issued a decision in Bohr's case. (Tr. 11-33). In that decision, the ALJ first concluded that Bohr had not engaged in substantial gainful activity since June 13, 2019, the alleged onset date. (Tr. 16). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Bohr had the following severe impairments: lumbar spinal stenosis, chronic obstructive pulmonary disease (COPD), neuropathy, major depressive disorder, generalized anxiety disorder, Attention Deficit Hyperactivity Disorder (ADHD), and Post-Traumatic Stress Disorder (PTSD). (Tr. 17). The ALJ also considered the plaintiff's obstructive sleep apnea/hypersomnia and cervical and thoracic degenerative disc disease but considered these impairments to be nonsevere. Specifically, the ALJ noted that the plaintiff's OSA/hypersomnia were controlled with medication management and use of medical technology/monitoring and that treatment provided a significant amount of pain relief/improvement to his cervical and thoracic degenerative disc disease. (Tr. 17). The ALJ also noted that, "any effects from the claimant's cervical and thoracic spine-related conditions and obesity

12

are accounted for in the less than full range of light exertional residual functional capacity below." (Tr. 17-18).

At Step 3, the ALJ determined that Bohr did not have an impairment or combination of impairments that met or medically equaled the severity of one of the disability listing impairments. (Tr. 18-21). The ALJ considered the plaintiff's mental impairments at this step, and concluded he had a mild limitation in understanding, remembering, or applying information, no limitation in interacting with others, and moderate limitations in concentrating, persisting, or maintaining pace and adapting or managing oneself. (Id.)

Between Steps 3 and 4, the ALJ then fashioned a highly restrictive residual functional capacity ("RFC") for the plaintiff which considered all of his impairments as reflected in the medical record, and found that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps and stairs. He should avoid climbing ladders or scaffolds or be exposed to unprotected heights or industrial machinery. He can tolerate occasional exposure to extremes in temperature, humidity, vibration, and environmental irritants, such as dusts, odors, fumes, and gases. The claimant is able to understand, retain, and carry out detailed, but not complex instructions and use judgment to make simple, work-related decisions in an environment involving only occasional workplace change.

(Tr. 21).

13

In reaching this conclusion the ALJ thoroughly discussed Bohr's spinal disorders, pain, neuropathy, COPD, and mental health conditions and, after summarizing the medical evidence, explained how each of these impairments was accounted for in the RFC. Specifically, the ALJ stated:

> In consideration of the effects of the claimant's physical conditions, the claimant was limited to light work and to account for any restrictions from his neuropathy, ensure his safety, and limit exacerbation of symptoms, exposure to climbing of ladders and scaffolds and workplace hazards was precluded and exposure to extremes in temperature, humidity and vibration was limited. Further, as a result of the effects of his respiratory condition, the claimant was limited to no more than occasional exposure to pulmonary irritants. As detailed above, the claimant's longitudinal examinations showed no motor, gait, sensory, or reflex deficits in the spine or lower extremities that would support a conclusion that the claimant was not capable of safely lifting, carrying, pushing, or pulling at the light level of exertion.
>
> As a result of ongoing mental health symptoms, to account for the claimant's deficits in concentration, insight, and judgment and difficulty managing stress, he was found capable of understanding, retaining, and carrying out detailed, but not complex instructions and using judgment to make simple, work-related decisions in an environment involving only occasional work-place change. In assessing health mental limitations, the undersigned relied upon evidence including the claimant's symptom reports, mental status examination findings, and history of treatment outlined in the discussion of the record above. Specifically, in finding the limitation to performing detailed but not complex work involving simple decisions and little change, the undersigned considered the claimant's limitations in maintaining concentration, persistence, and pace, and adapting and managing himself as outlined in Finding of Fact four (4) above.

(Tr. 24).

14

As to any other symptoms or limiting effects alleged by the plaintiff, the ALJ

concluded they simply were not supported by the clinical record, stating:

> The facts of record do not dispute the claimant has physical and mental conditions that cause difficulty. What the evidence of record demonstrates is that the claimant's symptoms may not have existed at the level of severity asserted by the claimant and/or may have had other mitigating factors against their negative impact on the claimant's ability to engage in work activity. The undersigned finds that the record lacks sufficient clinical evidence to support limitations beyond the stated residual functional capacity. The claimant does have medical impairments; however, the residual functional capacity contemplates and includes limitations to address these complaints to the extent these limitations are supported by the evidence of record.

(Id.)

Further, the ALJ determined that Bohr's reported activities of daily living did

not support the extreme level of impairment which he described, noting:

> It is also important to note that the claimant reported independence in self-care and activities of daily living, such as helping to care for pets, preparing simple meals, putting away laundry, running the vacuum, driving a vehicle, managing finances, shopping for groceries, and spending time with family (Exhibit B6E; Hearing Testimony). The claimant's treatment records show that he reported to the ER in April of 2021 after exacerbating his spine-related condition while working on a roof (Exhibit B10F/15, 18). Additionally, at the time of the hearing, the claimant reported his most recent injury occurred in November of 2022, when assisting his father to install drywall (Hearing Testimony).

(Tr. 23).

As to the medical opinion evidence, the ALJ credited parts of each of the State

agency medical and psychological consultant opinions but ultimately crafted an RFC

15

which reflected different parts of each opinion. For example, as to the opinions of the State agency psychological consultants, the ALJ found them to be of limited persuasive value, rejecting the experts' opinions that he could perform only simple, routine tasks as inconsistent with the paucity of memory or cognitive deficits noted in the record, but concluded that the evidence was consistent with the determination that the claimant as capable of detailed but not complex tasks involving simple decisions and only occasional change. (Tr. 25). Thus, the ALJ adopted a more comprehensive mental RFC than what was recommended by these psychological consultants, noting the deterioration in the plaintiff's mental condition without medication, causing voluntary hospitalization, as well as his continued pain and fatigue which limits his ability to concentrate and engage in more complex tasks. (Id.) Nonetheless, the ALJ cited to the plaintiff's ability to perform self-care and activities of daily living, indicating no further limitations were necessary. (Id.)

The ALJ also partially credited the assessments of the State agency medical consultants, finding the opinion of Dr. Bertolino that Bohr should be limited to light exertional work with limitations in climbing, exposure to hazards, and pulmonary irritants was partially supported by the initial level evidence showing a history of neuropathy, lumbar-spine related issues, and COPD, but that the reconsideration and hearing level evidence showing full strength bilaterally, stable gait, and negative

16

straight leg raise testing and his ability to remain independent in self-care, perform activities of daily living and engage in manual labor was not consistent with the other postural limitations opined by Dr. Bertolino. (Tr. 25). The ALJ then concluded the opinion of Dr. Arnold held little persuasive value, since the medical evidence of record did not support a determination that Bohr was significantly exertionally limited considering the improvement in his lumbar spine related condition following surgery, his ability to engage in physical activity such as roofing and installing sheetrock, and his most recent physical examination showed full strength bilaterally, negative straight leg raise testing, and a stable gait. (Tr. 25-26).

Having made these findings, the ALJ concluded that Bohr could not perform his past relevant work but that there were other jobs that existed in significant numbers in the national economy that he could perform. (Tr. 26-28). Accordingly, the ALJ concluded that Bohr had not met the stringent standard of disability set by law and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Bohr argues the ALJ erred in failing to consider all the limitations from both his severe and nonsevere impairments and also erred in his evaluation of the medical opinion evidence in formulating an RFC without fully crediting a medical opinion. These issues are fully briefed by the parties and are, therefore, ripe for resolution.

17

Upon consideration, we find that substantial evidence supported the ALJ's findings that these impairments were not fully disabling. Accordingly, we will affirm the decision of the Commissioner.

## III.   Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D.Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review, "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather, our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc.

Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted

on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable
> meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d
> 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ
> particular "magic" words: "Burnett does not require the ALJ to use
> particular language or adhere to a particular format in conducting his
> analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of

the ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim

made here, based upon alleged inadequacies in the articulation of a claimant's mental

RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the United

States Court of Appeals recently addressed the standards of articulation that apply

in this setting. In Hess the court of appeals considered the question of whether an

RFC which limited a claimant to simple tasks adequately addressed moderate

limitations on concentration, persistence, and pace. In addressing the plaintiff's

21

argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.' " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, ...." Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

**B. <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); <u>see also</u> 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant

is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013)

24

(quoting <u>Gormont v. Astrue</u>, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. <u>Biller</u>, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such

25

as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the

Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

> An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to

28

"supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions.

Judicial review of this aspect of ALJ decision-making is still guided by several

settled legal tenets. First, when presented with a disputed factual record, it is well-

established that "[t]he ALJ – not treating or examining physicians or State agency

consultants – must make the ultimate disability and RFC determinations." Chandler

v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating

medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence

29

for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d

Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision

is accompanied by an adequate, articulated rationale, it is the province and the duty

of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is

no evidence of any credible medical opinion supporting a claimant's allegations of

disability "the proposition that an ALJ must always base his RFC on a medical

opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

**D. The Commissioner's Decision Will Be Affirmed**.

In the instant case, the plaintiff alleges the RFC was not supported by

substantial evidence because it failed to account for all the limitations established

from his severe and nonsevere impairments and was not based upon a medical

opinion. In considering Bohr's arguments, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Judged against these deferential standards of review, we find that substantial evidence supported the RFC assessment in this case. Therefore, we will affirm this decision.

The plaintiff first argues that the RFC fashioned by the ALJ did not account for limitations from each of his severe and nonsevere impairments. At the outset, we note that it is longstanding precedent that in crafting the RFC, the ALJ is not required to include every impairment alleged by the claimant. Rutherford, 399 F.3d at 554. The ALJ is only required to include all of a claimant's "credibly established" limitations. Id. (quoting Plummer, 186 F.3d at 431). In our view, ALJ's decision accounted for each of the credibly established symptoms and limitations the plaintiff highlights.

As to Bohr's mental impairments, the plaintiff argues the ALJ should have

31

included off-task time and absenteeism in the RFC to account for the plaintiff's hospitalization for suicidal ideation. But the ALJ addressed this impairment and adequately explained why no further limitations were required in the RFC. Indeed, under the Third Circuit's holding in Hess, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living." 931 F.3d 198, 214 (3d Cir. 2019). Here, the ALJ adequately considered evidence of the plaintiff's mental impairments, including his inpatient hospitalization for suicidal thoughts, but concluded that his symptoms reports, mental status examination findings, and activities of daily living did not support further limitations from his mental impairments.

As the ALJ explained, the claimant was voluntarily hospitalized for suicidal ideation without a plan in October 2022 due to ongoing pain and losing his pet of fourteen years but was also noted to have ceased prescribed medications and was discharged with a new medication regimen. (Tr. 23). Outpatient counseling records since that time show he was making progress and responding well to treatment. (Tr. 1226-49). Moreover, the ALJ concluded Bohr's activities of daily living were

32

inconsistent with the assertion that his mental health conditions were totally disabling, as he was able to help care for pets, prepare simple meals, put away laundry, manage finances, and spend time with family. (Tr. 23). More fundamentally, there is simply no evidence in the record that the plaintiff's mental impairments, while severe, would cause significant off-task time or absenteeism. Instead, the ALJ adequately accounted for the plaintiff's alleged mental health symptoms in the RFC as follows:

> As a result of ongoing mental health symptoms, to account for the claimant's deficits in concentration, insight, and judgment and difficulty managing stress, he was found capable of understanding, retaining, and carrying out detailed, but not complex instructions and using judgment to make simple, work-related decisions in an environment involving only occasional work-place change. In assessing health mental limitations, the undersigned relied upon evidence including the claimant's symptom reports, mental status examination findings, and history of treatment outlined in the discussion of the record above. Specifically, in finding the limitation to performing detailed but not complex work involving simple decisions and little change, the undersigned considered the claimant's limitations in maintaining concentration, persistence, and pace, and adapting and managing himself as outlined in Finding of Fact four (4) above.

(Tr. 24). In our view, this assessment by the ALJ complies with the requirements under Hess and is supported by substantial evidence.

As to the plaintiff's physical impairments, the plaintiff argues the ALJ failed to include limitations for a variety of symptoms and impairments he argues were supported by the record including shoulder and thoracic pain, peripheral neuropathy,

and fatigue.

At the outset, the ALJ considered the evidence of Bohr's cervical and thoracic spine degenerative disc disease, but concluded that this impairment was nonsevere since, "treatment has provided a significant amount of pain relief/improvement." (Tr. 17). Moreover, the RFC fashioned in this case fully accounted for these limitations. As the ALJ explained, "any effects from the claimant's cervical and thoracic spine-related conditions . . . are accounted for in the less than full range of light exertional residual functional capacity below." (Id.) To the extent the plaintiff argues more limitations were required to account for this impairment, in the form of upper extremity limitations, neither the treatment records nor any medical opinion source supports the view that reaching limitations were necessary. Instead, it appears the plaintiff continued to perform activities which required the use of his upper extremities such as hanging off of his [ ] roof trying to fix a shingle," (tr. 1019), and remodeling his bathroom. (Tr. 1232).

The ALJ also discussed the plaintiff's fatigue and hypersomnia but also concluded it was nonsevere since it was controlled by medical technology/monitoring. Substantial evidence supports this conclusion since, while the record notes chronic fatigue and excessive sleepiness, after an October 2021 consultation where it was noted his CPAP had been recalled and needed to be

34

evaluated to ensure appropriate pressure, no further notes of hypersomnia, cataplexy, or narcolepsy were noted and there is no evidence further testing was conducted. (Tr. 469). In fact, examination notes frequently stated he was negative for fatigue. (Tr. 403, 420, 499, 522, 526, 533, 540, 547, 555, 568, 574, 577, 583, 590, 597, 601, 608, 614, 620, 625, 628, 637, 640, 651, 658, 668, 676, 689, 695, 709, 950, 1020, 1051, 1060, 1079, 1101). As to the plaintiff's neuropathy, the ALJ also acknowledged this diagnosis and treatment, (tr. 22), and explained, "to account for any restrictions from his neuropathy, ensure his safety, and limit exacerbation of symptoms, exposure to climbing of ladders and scaffolds and workplace hazards." (Tr. 24). Given the thorough and comprehensive summary of the plaintiff's impairments and comprehensive RFC assessment which addressed the limitations resulting therefrom, under the deferential standard of review which governs Social Security appeals there was no error here.

The plaintiff also challenges the ALJ's evaluation of the medical opinion evidence, arguing that there was little basis or support for the limitations set forth in the RFC where the ALJ assigned only partial weight to the state agency opinion and no treating or consultative source opined on his limitations. But this argument clearly fails under the new paradigm which governs the evaluation of medical opinion evidence. Indeed, as previously explained, "[t]he ALJ – not treating or examining

35

physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361. Therefore, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15. Moreover:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

Thus, there was no error here where the ALJ partially credited all the medical opinions and fashioned an RFC based on different parts of each opinion. On the contrary, this is precisely what ALJs are empowered to do in evaluating multiple medical source statements in the context of the plaintiff's longitudinal medical records, the plaintiff's own statements about his disability, and other evidence in the record. Indeed, in this setting, where there is no apparent treating source statement supporting a disability claim, an ALJ may rely upon other evidence, such as clinical evidence, non-examining and non-treating source opinions, and testimony regarding

the claimant's activities of daily living, to fashion an RFC.[3] When an ALJ is put to crafting an RFC in the absence of treating source statements, courts often adopt a pragmatic view, which sustains the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties.");

---

[3] The plaintiff also makes a passing, relatively undeveloped argument that the ALJ erred in failing to order a consultative examination in this case. But:

> The decision to order a consultative examination is within the sound discretion of the ALJ unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." Miller v. Berryhill, No. 17-cv-1452, 2019 WL 3776662, at *18 (M.D. Pa. Aug. 12, 2019) (citing Thompson v. Halter, 45 F. App'x. 146, 149 (3d Cir. 2002)). "[W]here the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim." Brown v. Saul, No. 18-cv-01619, 2020 WL 6731732, at *10 (M.D. Pa. Oct. 23, 2020) (report and recommendation adopted by 2020 WL 6729164 (M.D. Pa. Nov. 16, 2020)) (citing Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997)).

Chalfant v. Comm'r of Soc. Sec., No. 4:20-CV-1719, 2022 WL 838118, at *5 (M.D. Pa. Mar. 21, 2022). Here, while the plaintiff argues that the evidence of record should have been viewed in a different light, he has not made a showing that the record was somehow inconclusive or unable to be resolved without further examining source opinions. Therefore, this argument fails.

Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). Our review of the ALJ's assessment of the plaintiff's RFC then is deferential, and that RFC assessment should not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

In this case, in the absence of any treating source opinions supporting Bohr's claim, the ALJ carefully assessed his treatment history. (Tr. 21-24). That treatment history addressed all of Bohr's impairments, both severe and non-severe, but contained multiple entries which undermined his claim of disability, including examinations showing no motor, gait, sensory, or reflex deficits, improvement with treatment, and activities of daily living which were inconsistent with his alleged debilitation limitations, including his ability to work on a roof and install drywall. (Tr. 23-24). These medical records, therefore, provided sufficient evidentiary support for the ALJ's RFC determination, which limited Bohr to a reduced range of light work. This light work RFC with certain mental and environmental limitations was also supported, in part, by the opinions of the non-treating, non-examining State agency sources, which this court, and the court of appeals, have held can be credited

even in the absence of any treating source medical opinions. See Blatt v. Colvin, No. 116CV00128CCCGBC, 2017 WL 2791059, at *17 (M.D. Pa. Mar. 17, 2017), report and recommendation adopted sub nom. Blatt v. Berryhill, No. 1:16-CV-128, 2017 WL 2778554 (M.D. Pa. June 27, 2017) (citing Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011)).

Furthermore, even assuming the RFC fashioned by the ALJ was less restrictive than the medical records compel, any error alleged by the plaintiff would be harmless in the face of the vocational expert testimony that identified jobs in the national economy that the plaintiff could perform at both the light and sedentary exertional levels with the same postural, environmental, and psychological limitations crafted by the ALJ to account for the plaintiff's impairments, even if the plaintiff needed to alternate between sitting and standing due to low back pain and both lower extremity numbness. (Tr. 69-72). Thus, even if the ALJ had concluded the plaintiff's severe and nonsevere impairments had limited him to sedentary work, a level which fell below the level any medical expert opined, the ALJ still would have found him capable of performing jobs which existed in the national economy.

Finally, an overarching theme in the plaintiff's challenge to this unfavorable decision is that the ALJ's credibility determination of the plaintiff's alleged symptoms and limitations was flawed. On this score, the plaintiff argues that the

39

ALJ failed to address why the plaintiff would quit work "for no reason" based upon his work history which showed a commitment to his field. (Doc. 10, at 13). But we note that nothing in the ALJ's decision implies the plaintiff left work for no reason. In fact, the ALJ credited the plaintiff's symptoms and limitations to the extent they were supported by the clinical record and concluded the plaintiff could not return to his past heavy exertion work, but that he could perform a limited range of light work despite these limitations.[4] Moreover, it is clear that:

> Although a claimant's work history is one of many factors the ALJ considers in assessing an individual's subjective complaints, 20 C.F.R. § 404.1529(c)(3), the ALJ is not required to equate a long work history with credibility. See Christl v. Astrue, 2008 WL 4425817, *12 (W.D.Pa. Sept.30, 2008). Thus, a claimant's work history alone is not dispositive of the question of ... credibility.

Patton v. Astrue, No. CIV.A.08-205J, 2009 WL 2876715, at *3 (W.D. Pa. Sept. 8, 2009). Rather "[w]ork history 'is only one of many factors an ALJ may consider in assessing a claimant's subjective complaints.'" Sanborn v. Colvin, No. CIV.A. 13-224, 2014 WL 3900878, at *16 (E.D. Pa. Aug. 11, 2014), aff'd sub nom. Sanborn v. Comm'r of Soc. Sec., 613 F. App'x 171 (3d Cir. 2015). Thus, in the instant case, given the substantial body of clinical, opinion, and anecdotal evidence supporting

---

[4] Further, the plaintiff's testimony at the hearing about why he left work was vague and confusing. When asked why he was laid off he stated only that he "kept getting sick," later clarifying that he was missing work due to chronic pain from issues with his cervical, thoracic, and lumbar spine. (Tr. 40, 62-63).

the ALJ's decision, the ALJ was not obliged to reach a contrary conclusion based solely upon Bohr's work history.[5]

In sum, we are sympathetic to the plaintiff whose difficult and essential job left him with both physical and mental aftereffects which have limited his ability to perform his duties. But, at bottom, it appears that the plaintiff is requesting that this court re-weigh the evidence. This we may not do. See Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations"); see also Gonzalez v. Astrue, 537 F.Supp.2d 644, 657 (D. Del. 2008) ("In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of the record") (internal citations omitted)). Rather, our task is

---

[5] Moreover, cases which have remanded on the issue of work history have typically done so in the face of a *long* and consistent work history. See e.g. Corley v. Barnhart, 102 F.Appx. 752, 755 (3d Cir. 2004); Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir.1979) (noting that testimony by a claimant who had 29 years of continuous work, 15 with the same employer, as to his capabilities was entitled to substantial credibility); Witkowski v. Colvin, 999 F.Supp.2d 764, 766 (M.D. Pa. 2014) (remanding where the ALJ failed to account for a claimant's 24 years of continuous work, 15 with the same employer, when assessing his credibility). We do not discount the importance and difficulty of the work Bohr performed as an EMT and paramedic. Nonetheless, since the plaintiff alleges he became disabled at a relatively young age, he does not demonstrate the sort of lengthy work history which would be entitled to substantial credibility under these standards.

41

simply to determine whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Finding that this deferential standard of review is met here, we conclude that a remand is not appropriate.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case and will affirm that decision.

**IV.**   **Conclusion**

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying this claim will be AFFIRMED.

An appropriate order follows.

*s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: July 14, 2026